**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES McCONNELL, | Case No. 1:14-cv-02083-SMS |
| Plaintiff, | |
| v. | ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff James McConnell seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") under Title II and for supplemental security income ("SSI") under Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) ("the Act"). The matter is before the Court on the parties' cross-briefs, which were submitted without oral argument to the Magistrate Judge. Following a review of the record and applicable law, the Court affirms the decision of the Administrative Law Judge ("ALJ").

I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND[1]

A. *Procedural History*

Plaintiff applied for DIB and SSI on January 10, 2009. He alleged disability beginning on

---

[1] The relevant facts herein are taken from the Administrative Record ("AR").

1

January 6, 2009.  The Commissioner denied Plaintiff's claims on May 28, 2009, and upon reconsideration on August 26, 2009.  AR 146, 157, 322, 214.  At a hearing on February 1, 2011, before ALJ William Wallis, Plaintiff appeared with counsel and an impartial vocational expert ("VE").  AR 76.  Thereafter, on March 11, 2011, ALJ Wallis issued a written decision finding Plaintiff not disabled under the Act.[2]  AR 196.  Plaintiff requested review from the Appeals Council, who remanded the case with instructions for the ALJ to further evaluate the Plaintiff's mental impairments, give further consideration to his maximum residual functional capacity ("RFC"), and obtain supplemental evidence from a VE to clarity the effect of the assessed limitations on Plaintiff's occupational base.  AR 202-203.

At the second hearing, held on March 21, 2013, Plaintiff appeared and testified before ALJ Sharon L. Madsen.  Also at the hearing were Plaintiff's counsel and an impartial VE.  AR 38.  In a written decision dated May 10, 2013, ALJ Madsen found Plaintiff not disabled under the Act.  AR 31.  On October 29, 2014, the Appeals Council denied review of ALJ Madsen's decision, which thus became the Commissioner's final decision, and from which Plaintiff filed a timely complaint.  AR 1, Doc. 1.

B. *Factual Background*

1. Medical Evidence

Plaintiff's record is expansive, with documents dating as far back as 2003 from various medical facilities such as University Medical Center, Fresno Community Regional Medical Center ("Fresno Community"), Fresno Shields Medical Center ("Fresno Shields"), and from numerous

---

[2] Included in the record is a prior ALJ decision from 2004 denying Plaintiff's 2002 claims for DIB and SSI.  In his March 11, 2011 written decision, ALJ Wallis addressed the 2004 decision but declined to apply the presumption of continuing nondisability under *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988) because, according to the ALJ, Plaintiff has alleged a different disability onset date and different impairments.  *See id.* at 693 ("The claimant, in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove changed circumstances indicating a greater disability.") (internal quotations omitted); AR 185-186.

physicians.

Generally, records from Fresno Community between January 2008 and March 2009 show various examinations performed on Plaintiff after complaints of injury to the elbow, weakness in his right foot, coughing, sore throat, dysuria, acute pharyngitis, and arthritis. AR 527-548. In July 2009, a neurodiagnostic laboratory study of Plaintiff's hands was terminated at his request. AR 651. And in July 2010, Plaintiff visited the center with complaints of hip pain. AR 624-626. Additional records show that from September 2011 to April 2013 Plaintiff made visits for follow ups, medications, complaints of pain flank, abdominal pain, and nausea. In September 2011, Plaintiff was admitted to the emergency room after suffering two seizures. And in January 2013, he was admitted to the emergency room complaining of nausea and vomiting. Plaintiff stated he was hurting "all over too but that is likely from his fibromyalgia, " admitted he had been out of some medications and forgets to take then, which "may be why he feels like this." AR 635, 718-751. Similarly, records from Fresno shields show visits for examinations and medications, notably a prescription for Plaintiff to purchase a Velcro wrist brace for his carpal tunnel syndrome. AR 591-618.

Spanning a period of about six years, five physicians evaluated Plaintiff at the request of the Department of Social Services ("DSS"): Ekram Michiel, M.D.; Steven Stoltz, M.D.; Tahir Hassan, M.D.; Richard Engeln, Ph. D.; and Steven C. Swanson, Ph. D.

On August 20, 2005, Dr. Michiel performed a psychiatric evaluation of Plaintiff and diagnosed him with depressive disorder not otherwise specified. Dr. Michiel opined that Plaintiff could: (1) maintain attention and concentration to carry out one or two step simple job instructions, (2) relate and interact with coworkers, supervisors and the general public, and (3) carry out an extensive variety of technical and/or complex instructions. AR 431-433. On the same day, Dr. Stoltz performed an internal medicine evaluation of Plaintiff. AR 434. Dr. Stoltz noted Plaintiff

brought a cane to the exam room and concluded that while he "walked rather slowly for someone his age in the exam room [he] did not require the use of the cane." Functionally, Dr. Stolz concluded Plaintiff meets the criteria of fibromyalgia, his "lifting and carrying should be tolerable at 10 pounds with standing or walking at six hours in a normal eight hour work day. The only restriction of sitting activities would be a five minute rest break every hour for change in his position." AR 438.

On February 17, 2006, another internal medicine evaluation was performed by Dr. Hassan, with whom Plaintiff reported using a cane that was not prescribed. Plaintiff reported being independent with his activities of daily living. Functionally, Dr. Hassan opined Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently "due to his fibromyalgia." He could sit, stand and walk six hours out of an eight-hour workday with normal breaks, but would need five minutes of rest from sitting or a change in sitting position every hour. He did not require an assistive device to ambulate and had no manipulative limitations. His postural limitations included occasional climbing, balancing, stooping, crouching, and crawling due to back pain and fibromyalgia. He had no visual or communicative environmental limitations. AR 439-444.

On May 18, 2006, Dr. Engeln performed a psychological evaluation of Plaintiff and found him capable of job adjustment "where instructions are unidimensional and normal supervision is provided." Further, Plaintiff could perform one-to-two step simple job instructions as his social-emotional adaptation adjusts with his medical conditions. Any "[r]estrictions to job adjustment would be medical-physical in nature." AR 488-492.

On May 2, 2009, Dr. Stoltz completed another internal medicine evaluation. He noted Plaintiff moved in six-inch steps around the exam room without the use of his walker and did not understand why Plaintiff used one. Surprising to Dr. Stolz was "the absence of typical tender points," despite a documented history of fibromyalgia, although there was tenderness to light touch up and down his mid and lower spine. AR 554. He opined Plaintiff could lift twenty pounds

occasionally and ten pounds frequently, sit without restriction, and stand for sixty to ninety minutes and walk thirty to forty-five minutes at a time. Plaintiff could stand and walk four hours in an eight-hour workday, and had no restrictions with use of his hands and feet. However, Dr. Stolz advised limiting Plaintiff to occasional climbing stairs, ramps, ladders or scaffolds, on a frequent basis for other postural activities. AR 549-554.

Three days later, Dr. Swanson performed a psychological assessment of Plaintiff who arrived at the examination with a walker. Plaintiff reported he had been "trying to get on disability since 1995," and that he could independently engage in all activities of daily living. Dr. Swanson diagnosed Plaintiff with cannabis abuse, alcohol abuse (in remission), and rule out opioid abuse. He concluded Plaintiff could maintain concentration or relate appropriately to others in a job setting, respond appropriately to work situation, and handle funds and changes in routine. Plaintiff could understand, carry out, and remember simple instructions. AR 556-62.

Aside from the DSS-requested evaluations, the record also contains reports from a number of state medical consultants who generally found Plaintiff's mental RFC unremarkable and that he could sustain simple repetitive tasks if contact with others is limited. AR 567, 587-590. The record also contains a questionnaire about Plaintiff's ability to engage in work from Nicholas J. Orme, M.D., dated December 10, 2010. It is unclear whether Dr. Orme completed the questionnaire at the request of DSS. Therein, Dr. Orme opined he did not think Plaintiff could perform any full time work at any exertion level due to advance arthritis of the hands based on x-rays. Plaintiff could lift five pounds at most and could never reach, handle, feel, push/pull, and grasp. He believed Plaintiff had been disabled since February 22, 2010. When addressing a question about any fibromyalgia tender points, Dr. Orme stated, "N/A." AR 619-620.

After the first hearing, DSS obtained additional evaluations from Drs. Stoltz and Michiel. During a July 31, 2012 evaluation, Dr. Stolz observed Plaintiff appear with a walker but walked in

the examination room without use of the walker, although he had an extremely slow gait and complained of pain in the legs.  Again, Dr. Stolz concluded that interestingly no typical diffuse tender points associated with fibromyalgia were present.  He opined that Plaintiff could lift and carry ten pounds frequently and up to fifty pounds occasionally; stand for six hours and walk for five hours in an eight-hour workday with no limits on sitting activities; use either foot to operate controls on a frequent basis; engage in postural activities on a frequent but not continuous basis; and no gross impairments of hearing or vision.  Dr. Stolz stated he believed Plaintiff's limitations began in 2000 and lasted for twelve consecutive months.  AR 698-709.

Dr. Michiel evaluated Plaintiff for the second time on August 3, 2012.  He diagnosed Plaintiff with adjustment disorder with depressed mood, cannabis dependence, alcohol dependence in remission, fibromyalgia, and status post ankle trauma.  Dr. Michiel found no restrictions on Plaintiff's activities of daily living, but unlike the earlier psychiatric evaluation, concluded Plaintiff could not maintain attention and concentration to carry out simple job instructions.  He could, however, relate and interact with coworkers, supervisors, and the general public if he becomes employed.  But he could not handle his own funds due to his past drug use.  AR 711-714.

2. <u>Plaintiff's Written Testimony</u>

In an undated disability report, Plaintiff reported not being able to work due to: problems walking, bipolar disorder, bursitis in the arms, fibromyalgia, and kidney problems.  AR 365.

Plaintiff provided an Adult Function Report, dated April 8, 2009, wherein he described a typical day included taking his medications, watching television, lying in bed, eating, playing video games, going to the bathroom, showering, and petting his cat.  Due to his conditions Plaintiff struggled to sleep, and when he does Plaintiff sleeps at least fourteen hours.  He had trouble with personal care such as putting on shoes, standing long enough to shower, shaving, and feeding himself.  He could make sandwiches or frozen meals once or twice a day, and do some laundry and

6

fold it. However, he needed reminding to do them. He could drive and go out alone. He would go out about five to seven times a week usually to check the mail, take out the trash, to the store or to visit someone. He shopped in the stores once a week for an hour at most and could handle money. AR 373-377.

He enjoyed watching television, movies and playing video games daily, and playing board games once or twice a month. He engaged in these activities even more since the onset of his conditions. Socially, he spends time with his girlfriend, talks with his sisters on the phone or in person, plays games, and visits with others a few times a month. Overall, he is less active and stays home all the time because he cannot walk and is in too much pain. AR 377-378.

Plaintiff claims his conditions affected all his posturals and other abilities such as hearing, seeing, concentration, memory, understanding, completing tasks, following instructions, using his hands, and getting along with others. AR 378. He could walk for no more than ten minutes before needing to rest for as long as "an hour later or a day later." He could pay attention for thirty minutes at most and has become forgetful. He has since developed unusual behaviors such as nail biting and finger chewing. He wears glasses, uses a walker, a cane, and a brace for his elbow. The walker and brace were prescribed in January 2009, the cane was prescribed "several years ago," and the glasses were prescribed in "2001 or 2002." AR 378-379.

Plaintiff's work history included employment as a cashier, pizza delivery driver, resident manager, care provider, maintenance, shift manager, security guard, and a detailer for RVs and trailers. As a detailer, Plaintiff expended seven hours standing and walking; two hours sitting; three hours climbing; two hours stooping and kneeling; four hours handling/grasping, reaching, and writing; and zero hours crouching or crawling. He lifted ten pounds at most and frequently. AR 389, 391.

3. <u>Third Party Written Testimony</u>

Plaintiff's girlfriend, Heather McDowell, provided a Third Party Function Report, dated April 8, 2009. She reported activities of daily living generally consistent with Plaintiff's statements in his Adult Function Report. Ms. McDowell stated Plaintiff never cooked as his mom used to do the cooking or he would eat out because "[h]e's lazy [and] doesn't take time to cook." In addition to laundry, Plaintiff vacuumed and sometimes fixes broken things. He needed "to be told to do anything or else he would lay in bed [and] watch T.V. all day." According to Ms. McDowell, Plaintiff could pay attention for maybe an hour at most, does not handle stress or changes in routine well. Plaintiff was forgetful, "argues about having to do anything [and] complains all the time about his problems." AR 381-388.

4. <u>First Hearing</u>

Plaintiff testified to completing the seventh grade and one semester of college. AR 84. Along with the listed conditions of bipolar disorder, bursitis, fibromyalgia, kidney problems and difficulty walking, Plaintiff claimed to have carpal tunnel, bad ankles, irritable bowel syndrome, and back problems. He was, at the time, taking medications for high cholesterol, high blood pressure, and gout. Plaintiff stated that his walker was prescribed by a physician at Fresno Community Regional Medical Center. He had some difficulties with personal care and insomnia. To pass time, Plaintiff watched television, pet his cats, went online, visited with his sister, and played video games. He did no household chores but goes grocery shopping. He admitted to using weed to help with the pain, sleep, and to trigger his appetite. AR 97-100, 113-119.

Plaintiff testified he could lift about five pounds on and off, stand for a total of an hour and a half, walk without a walker for a total of twenty-four minutes (eighty minutes with a walker), and sit for a total of four hours for six hours out of an eight-hour shift. He would need to lie down for three hours on and off during an eight-hour shift. He needed to elevate his legs for about ten to fifteen

minutes every couple of hours. AR 103-107, 121.

A VE at the hearing also testified. AR 121. The ALJ posed a number of hypotheticals for the VE. First, he asked the VE to consider a person of the same age, education, language, and work background as Plaintiff, who could: lift, carry, and push/pull twenty pounds occasionally and ten pounds frequently; stand and/or walk four hours and sit for up to six hours in an eight-hour workday; occasionally climb; understand, remember and carry out simple, repetitive tasks. The VE opined that if simple and repetitive means unskilled tasks in general, such person could perform the work of a ticket seller, courier, and toe-closing machine tender. But, where such person could only occasionally handle, feel, and grasp bilaterally, he could not perform these jobs. The ALJ then asked the VE to consider the same person with the change that he could perform the full range of sedentary work. The VE opined that such person could not perform any of Plaintiff's past work but could perform all the jobs of unskilled, sedentary work. Finally, the ALJ asked the VE to consider a person who could lift, carry, push/pull five pounds occasionally or frequently, but could not sit, stand or walk during an eight-hour workday, and never reach, handle, feel, push/pull or grasp with the upper extremities. The VE opined that such person could not perform any work. AR 125-130.

5. <u>Second Hearing</u>

Plaintiff appeared at the hearing with a wrist brace and an arm sling. He wore the brace because of his carpal tunnel syndrome and the sling because of flare ups in the ball joint of his collarbone. AR 53, 50. He testified to completing the eighth grade and one semester of college. AR 44.

A typical day for Plaintiff consisted of waking up, using the bathroom, taking medications, getting something to drink, sitting down in his chair to watch television or read for awhile, lying in bed for about an hour, sitting in the chair for awhile again, getting something to eat, lying in bed again, picking up his daughter's toys, taking a nap, sitting in the chair again, and then back to bed

again. He engaged in no social activities and did not shop. He used a walker when going outside but a cane when inside the house. AR 45-46, 53.

Discussing his medical conditions, Plaintiff testified his fibromyalgia gave him four bad days out of a week; his gout caused flares up in the feet about once a month; his blood pressure was still high but under control; reflux was still an issue; he usually does not sleep for a couple of days; his ankles are always ice-cold and continue to collapse; and he still had irritable bowel syndrome. He was, at the time, taking medications for most of these conditions. AR 50-52, 61, 63. Plaintiff could lift and carry about fifteen to twenty pounds, sit continuously for about twenty minutes, stand continuously for about ten minutes, walk continuously for thirty minutes with a walker and fifteen minutes without, use his hands continuously for five minutes, and pay attention for about ten minutes at a time. He could not climb stairs and could not lift his right arm overhead. He also experienced a seizure/syncope monthly. Plaintiff further testified about constant pain in the spine area and an enlarged prostate which caused frequent urination. AR 54-55, 65-66.

A different VE testified and responded to a number of hypotheticals. First, the VE was to consider a person of the same age, education, and work background as Plaintiff who could: lift and carry fifty pounds occasionally and ten pounds frequently; sit without restriction; stand for six hours and walk for five hours in an eight-hour workday; and is restricted to simple, routine tasks. The VE opined that such person could perform Plaintiff's past work as a convenient store clerk, a detailer, and pizza deliverer. Second, the VE was to consider the same person but who could lift and carry twenty pounds occasionally and ten pounds frequently, and who could sit, stand, and walk for six to eight hours in an eight hour workday. According to the VE, such person could work as a convenience store clerk. Third, the VE was to consider the same person but who could lift and carry ten pounds occasionally and frequently; sit for six hours and stand or walk for two hours in an eight hour workday; and, have superficial and incidental contact with the public. The VE opined that such

person could not perform any of Plaintiff's past work, but could work as a microfilming document preparer and surveillance system monitor, and addresser. Fourth, the VE opined that if such person needed an additional two to four breaks of thirty minutes per day, he could not perform any work. And finally, if such person could only use his hands occasionally for all activities, he would be able to perform the work of a surveillance system monitor. AR 69-71.

6. ALJ's Decision

A claimant is disabled under Titles II and XVI if he is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of no less than twelve months. 20 C.F.R. §§ 404.1505(a), 416.905(a). To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process which an ALJ must employ to evaluate an alleged disability.[3]

In the May 10, 2013 written decision, ALJ Madsen found that at step one, Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 6, 2009. At step two, Plaintiff had the following severe impairments: fibromyalgia, chronic renal insufficiency, gout, bipolar disorder, cannabis abuse, and a history of alcohol abuse. At step three, Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Plaintiff had the RFC to lift and carry twenty pounds occasionally and ten pounds frequently, and stand and/or walk and sit for six to eight hours in an eight-hour workday. He was mentally limited to performing only simple, routine tasks. At step

---

[3] "In brief, the ALJ considers whether a claimant is disabled by determining: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work. The claimant bears the burden of proof at steps one through four." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

four, Plaintiff was able to perform his past relevant work as a detailer.  Consequently, the ALJ concluded that Plaintiff was not disabled as defined under the Act since January 6, 2009.  AR 22-31.

## II.  DISCUSSION

A. *Legal Standards*

This Court reviews the Commissioner's final decision to determine if the findings are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 401 (1971)), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. "If the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the Commissioner.  However, we must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation and quotations omitted).  "If the evidence can support either outcome, the Commissioner's decision must be upheld." *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *see* 42 U.S.C. § 405(g) (2010).  But even if supported by substantial evidence, a decision may be set aside for legal error. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Moreover, an ALJ's error is harmless "when it was clear from the record that [the] error was inconsequential to the ultimate nondisability determination." *Robbins v. Soc. Sec. Admin*. 466 F.3d 880, 885 (9th Cir. 2006).

C. *Analysis*

On appeal, Plaintiff contends the ALJ failed to properly evaluate two medical opinions, namely those of Drs. Stolz and Michiel.

    a. <u>Dr. Steven Stolz</u>

Plaintiff takes issue with the ALJ's treatment of Dr. Stolz's May 2, 2009 evaluation. First, Plaintiff contends the ALJ erroneously rejected Dr. Stolz's opinion that Plaintiff could stand and walk for four out of eight hours in an eight-hour workday. He contends the ALJ failed to consider the evidence showing the limitation stemmed from the fibromyalgia. The Commissioner counters the ALJ in fact considered evidence of the fibromyalgia but that the minimal evidence of functional limitations supported the ALJ's findings. The Court agrees with the Commissioner.

In her written decision, the ALJ recounted Dr. Stoltz's May 2, 2009 evaluation at length and stated, in part:

> Dr. Stolz diagnosed the claimant with . . . He opined that the claimant was able . . . *to stand and walk for four hours out of eight. . . . Dr. Stoltz noted that the claimant had diffuse pain in the upper and lower extremities, but was somewhat surprised by the lack of typical fibromyalgia tender points.*
>
> I give some weight to Dr. Stoltz's opinion as far as it is consistent with the residual functional capacity above. However, *I give less weight to his opinion that the claimant is limited to four hours of standing and walking. There is no objective evidence to support limitations involving the back or lower extremities except the claimant's gout, but it is well controlled with medication, and flare-ups are rare. I also note that Dr. Stoltz's diagnoses included irritable bowel syndrome, which he took from a prior consultative examination, and kidney disease, which was treated only once[.]*

AR 27 (emphasis added). The ALJ thus expressly considered Dr. Stolz's opinion about Plaintiff's fibromyalgia, contrary to his assertion that "ALJ failed to acknowledge that fibromyalgia symptoms of diffuse pain in the back and lower extremities were a factor in Dr. Stolz's stand and walk limitations." Doc. 19, p. 11.

Further, Plaintiff's contention that "the ALJ completely ignored the fibromyalgia symptoms and failed to consider that it was this disease that was the basis of the limitation" is meritless. Doc. 19, p. 10. Plaintiff appears to conflate the issues. As an initial matter, the ALJ did not ignore the

fibromyalgia symptoms.  She discussed Plaintiff's complaints of pain from his fibromyalgia during his January 2013 admission to the emergency room for abdominal pain and vomiting.  AR 26.  But there is no objective medical evidence that Plaintiff's fibromyalgia is the source of the standing and walking limitation, and he points to none other than Dr. Stolz's statement.  Plaintiff's reference to Dr. Stolz's statement that diffuse pain in the upper and lower extremities would support a finding of fibromyalgia misses the point.  That pain suggests the presence of fibromyalgia does not amount to fibromyalgia causing a specific limitation.  Dr. Stolz did not conclude that the standing and walking limitation stemmed from fibromyalgia.  He even questioned the documented history of fibromyalgia, noting the surprising "absence of typical tender points" and "recommend[ed] an orthopedic and/or neurological evaluation."[4]  AR 554.  Nevertheless, whether Plaintiff has fibromyalgia is not the issue.  The ALJ explicitly found that Plaintiff had a number of severe impairments, among them fibromyalgia.  She therefore did not reject the existence of fibromyalgia, only that despite the impairment, she was not convinced that Plaintiff was limited to standing and walking for only four hours in an eight-hour workday absent supporting objective evidence.  And the record substantially supports ALJ Madsen's findings.

       Second, Plaintiff contends the ALJ erred in failing to explain the significance of Dr. Stolz's opined diagnoses of irritable bowel syndrome and kidney disease.  The Commissioner did not specifically address this contention.  Because Plaintiff provides no analysis on this issue, the Court cannot sufficiently assess it.  *See*, *e.g.*, *Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 872 (9th Cir. 2001) *aff'd sub nom. Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721 (2003) ("We therefore cannot grant relief [on this] argument, because he has failed to develop the record and his argument sufficiently to render it capable of assessment by this court.").  The Court notes, however, that an

---

[4] Plaintiff's reliance on Dr. Stolz's 2005 evaluation of Plaintiff is unpersuasive because it predated Plaintiff's alleged a disability onset date of January 6, 2009.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance.").

ALJ "is not required to discuss every piece of evidence." *Leitner v. Comm'r Soc. Sec. Admin.*, 361 F. App'x 876, 878 (9th Cir. 2010).[5] Nor is an ALJ "required to discuss evidence that is neither significant nor probative." *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012). And, here, the ALJ did find that Plaintiff had the severe impairment of chronic renal insufficiency.

Finally, Plaintiff contends the ALJ provided no reason for rejecting Dr. Stolz's opined postural limitations and that the "silent disregard" was error. Doc. 19, p. 11. The Commissioner avers any error was harmless because the opined limitations are consistent with the ALJ's finding of light work and with the requirements of an automobile detailer under the Dictionary of Occupational Title. Again, the Plaintiff's contention is meritless. As noted, Dr. Stolz stated Plaintiff should be limited to occasional climbing while other postural activities could be done frequently.[6] This in no way belies what Plaintiff himself reported doing while he worked as a detailer—climbing for three hours; stooping and kneeling for two hours; and, no crouching or crawling. Dr. Stolz's opined postural limitations also exceed how one would generally perform the job of an automobile detailer in the national economy. *See* DICOT 915.687-034.

    b.  <u>Dr. Ekram Michiel</u>

Plaintiff contends the ALJ's reasons for rejecting Dr. Michiel's opinion that Plaintiff cannot maintain attention and concentration to carry out simple job instructions were legally illogical or factually incorrect. The Commissioner argues the ALJ properly considered Dr. Michiel's opinion and, in doing so, considered the factors allowable within the disability determination.

When discussing the weight given to part of Dr. Michiel's August 3, 2012 evaluation, the ALJ stated:

---

[5] This unpublished decision is citable under Rule 32.1 of the Federal Rules of Appellate Procedure. *See also* 9th Cir. R. 36–3(b).

[6] "Occasionally means occurring from very little up to one-third of the time. [¶] Frequent means occurring from one-third to two-thirds of the time." SSR 83-10 (internal quotations omitted).

> I give little weight to Dr. Michiel's opinion that the claimant is unable to perform simple tasking. The *claimant's pursuit of disability benefits since 1995 . . . and his recitation of his impairments and medication at his very numerous medical appointments* belies a complete inability to maintain attention and concentration. Furthermore, *he was able to maintain adequate attention and respond appropriately throughout the hearing of almost one hour*.

AR 29 (emphasis added). She thus discounted part of Dr. Michiel's opinion based on Plaintiff's continued effort to obtain Social Security benefits, his ability to repeatedly recite his impairments and medications to multiple physicians, and his ability to focus at the hearing. These reasons, contrary to Plaintiff's contention, are based in law and fact.

It is settled law that an ALJ "is entitled to draw inferences logically flowing from the evidence" in making her findings. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (citations omitted). Additionally, her personal observations may be a factor, albeit not the sole factor, in the disability determination. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("The inclusion of the ALJ's personal observations does not render the decision improper.") (quotations omitted); *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("an ALJ's personal observations may be used only in the overall evaluation of the credibility of the individual's statements") (internal quotations omitted). Turning then to the facts of this case, it was logical for the ALJ to find that an individual who has spent approximately fourteen years seeking Social Security benefits and who was able to, as reflected in the record, repeatedly recite his impairments (and at times medication) at multiple evaluations during the fourteen-year period, would be capable of maintaining concentration to some extent. Combined with the fact that the individual could sit through a forty-eight minute hearing suggests he has the attention and concentration necessary to perform simple job instructions. The ALJ's inferences here are permissible and do not defy logic.

Finding no error in the ALJ's findings, the Court need not address Plaintiff's argument that the alleged errors were not harmless and that a remand for payment of benefits is warranted.

## III. CONCLUSION

Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court shall enter judgment in favor of the Commissioner of Social Security and against Plaintiff, James McConnell.

IT IS SO ORDERED.

Dated: **August 10, 2016**        **/s/ Sandra M. Snyder**
　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

17